# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

ABDUL JALILI,

     Petitioner,

  v.

FERETI SEMAIA, et al.,

     Respondents.

Case No. 5:26-cv-01703-MBK

ORDER GRANTING PETITION AND ISSUING WRIT OF HABEAS CORPUS

Petitioner Abdul Jalili is currently in the custody of the Department of Homeland Security at the Desert View Annex Detention Facility in Adelanto, California. Mr. Jalili fled to United States after being attacked by members of the Taliban, who targeted Mr. Jalili because his brother worked with the United States military and later immigrated to the United States through the Afghan Special Immigrant Visa program. Mr. Jalili entered the United States on January 23, 2025, and was apprehended by immigration authorities shortly thereafter. After his requests for protection under the asylum laws were denied, Mr. Jalili became subject to a final order of removal on September 29, 2025. However, Mr. Jalili has remained detained since that

time because the Government has been unable to effectuate his removal to Afghanistan or any third country.

In this habeas action, Mr. Jalili claims his ongoing detention violates 8 U.S.C. §1231(a)(6) and the Due Process Clause. In their Answer, Respondents state that they "are not presenting an opposition argument at this time." Dkt. 7 at 2. Because it is undisputed that the Government is unable to remove Mr. Jalili to Afghanistan and has taken no steps to facilitate his removal to a third country, the Court finds that Mr. Jalili's removal is not reasonably foreseeable and his detention is not authorized by Section 1231. Accordingly, the Court grants the Petition and issues a writ of habeas corpus requiring Mr. Jalili's immediate release, subject to reasonable conditions of detention, and preventing his re-detention unless Respondents comply with the revocation procedures set forth in 8 C.F.R. § 241.13(i).

## I. FACTS AND PROCEDURAL HISTORY

Petitioner Abdul Jalili is a 29 year-old from Afghanistan. Mr. Jalili's brother worked to assist the United States military and immigrated to the United States in 2017 through the Afghan Special Immigrant Visa program. Dkt. 1-3 at 2. He now lives in Colorado with his wife and three children. *Id.* After the Taliban assumed control of the Afghanistan government in 2021, seven members of the Taliban came to Petitioner's home looking for his brother. *Id.* They accused the family of being traitors, in light of his brother's work for the American government. *Id.* They severely beat Mr. Jalili in front of his mother, resulting in a significant gash on his head, which remains to this day. *Id.* Although these Taliban members let Mr. Jalili go that day, they told him they would return, and he and his mother believed he would be killed if he stayed in Afghanistan. *Id.* Fearing for his life, Mr. Jalili began the long

journey to the United States—the only other place in the world where he has family. *Id.*

Over the course of the journey, Mr. Jalili lost all his identification documents, except for a paper copy of his Afghan identification card. *Id.* Eventually, Mr. Jalili arrived in Mexico, where he applied for asylum to the United States using the CBP One application procedures. *Id.* Mr. Jalili waited three months attempting to get a CBP One appointment to seek asylum. *Id.* However, on January 20, 2025, the Trump administration ended the CBP One application and process for seeking asylum. Dkt. 1 at 6. Mr. Jalili was therefore left without any clear means by which to pursue his asylum claim. *Id.* He decided to cross the United States/Mexico border into Arizona on January 23, 2025. Dkt. 1-3 at 2-3. Almost immediately, immigration authorities apprehended Mr. Jalili and confiscated the paper copy of his Afghan identification card. *Id.* Mr. Jalili attempted to explain to the officers that he was seeking asylum, but was unable to effectively do so, given his limited ability to communicate in English. *Id.* at 3.

After being apprehended, Mr. Jalili was brought to a detention facility in Arizona for several weeks and then transferred to Northwest Detention Center in Tacoma, Washington, where he remained detained for several months. *Id.* Immigration authorities later transferred Mr. Jalili to California City Detention Facility and then to Desert View Annex Detention Facility in Adelanto, California, where he is currently detained. *Id.*

Mr. Jalili indicates he was initially screened by an asylum officer on March 28, 2025. *Id.* On September 17, 2025, Mr. Jalili had a credible fear interview. *Id.* However, Mr. Jalili speaks the Dari language, and the interpreter for the interview spoke Farsi or a different dialect of Dari that Mr. Jalili did not understand. *Id.* The interpreter could also not understand Mr.

Jalili. *Id.* As a result of the inability to understand and communicate effectively, Mr. Jalili received a negative credible fear finding. *Id.* He requested a review of the finding by an Immigration Judge ("IJ"), which was held on September 29, 2025. *Id.* Petitioner had a Dari interpreter at this hearing, but believed that "the judge was not listening to [him] at all," despite Petitioner trying "to explain that [he] would be killed if [he] went back to Afghanistan" *Id.* at 3-4. Despite Petitioner's arguments, the IJ affirmed the DHS finding that Petitioner had not established a credible fear. *Id.* at 3. At some point after Mr. Jalili was ordered removed, Immigration Customs Enforcement ("ICE") officers advised him they intended to remove Petitioner to an unidentified third country. *Id.* at 4. Since then, no officer has spoken with Petitioner about anything regarding his immigration case or removal to any third country. *Id.*

While detained, Mr. Jalili's mental and physical health have significantly deteriorated. *Id.* He has lost nearly twenty pounds because the food at the facility makes him sick. *Id.* He is unable to communicate with anyone else in the facility, including to request medical and mental health care, due to his limited ability to speak and understand English. *Id.* He has grown increasingly lonely and isolated. His counsel represents that Petitioner has communicated that he has considered taking his own life, given his continued confinement with "no end in sight." Dkt. 1 at 7.

Petitioner filed the instant habeas petition on April 7, 2026. Dkt. 1. He asserts three causes of action: (1) his ongoing detention violates 8 U.S.C. § 1231, as construed by *Zadvydas v. Davis*, 533 U.S. 678 (2001), because his removal is not reasonably foreseeable; (2) his ongoing detention violates due process; and (3) removal to a third country without notice and opportunity to be heard violates due process. *Id.* at 18-20. The Court issued General Order

26-05 and a Briefing Schedule on April 8, 2026. Dkt. 4. On April 15, 2026, Respondents filed an answer in which they stated that they "are not presenting an opposition argument at this time." Dkt. 7 at 2.

## II.   DISCUSSION

In light of Respondents' statement that they "are not presenting an opposition argument at this time," (Dkt. 7 at 2), the Court concludes that Petitioner is entitled to habeas relief. The Court finds that Mr. Jalili's removal is not reasonably foreseeable, and his detention is not authorized by Section 1231, because it is undisputed that the Government has taken no steps to facilitate his removal to Afghanistan or any third country. Accordingly, the Court grants the Petition and issues a writ of habeas corpus requiring Mr. Jalili's immediate release, subject to reasonable conditions of supervision, and preventing his re-detention unless Respondents comply with applicable regulations.

**A. Petitioner's Detention Violates 8 U.S.C. § 1231.**

Petitioner alleges—and Respondents do not dispute—that his detention is governed by Section 1231(a).  Section 1231 governs the Government's authority to detain non-citizens with final orders of removal. The statute provides that the Government "shall detain" noncitizens during the "removal period." 8 U.S.C. § 1231(a)(2)(A). The "removal period" is defined as beginning on the "latest of the following": "(i) The date the order of removal becomes administratively final"; "(ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order"; or "(iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement." *Id*. at § 1231(a)(1)(B).

Thereafter, the statute permits—but does not require—the detention of certain noncitizens found inadmissible or removable on specified grounds, "or who have been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal." *Id*. at § 1231(a)(6). Such individuals "may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)." *Id*.

The Supreme Court has construed Section 1231(a)(6) not to permit the "indefinite detention" of noncitizens, which would otherwise pose serious constitutional concerns. *Zadvydas*, 533 U.S. at 690-96. The Court instead interpreted Section 1231(a)(6) to permit detention only where removal is "reasonably foreseeable." *Id*. at 699. To effectuate this limit, the Court found it "practically necessary to recognize some presumptively reasonable period of detention," which it set at six months. *Id*. at 701. "After this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id*. Because the statute only authorizes a "reasonable" period of detention to effectuate removal, "as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id*.

The Court finds that Petitioner's detention is not authorized by Section 1231(a)(6) because his removal is not reasonably foreseeable. Mr. Jalili has been detained since on or around January 23, 2025. He asserts that "[his] order of removal to Afghanistan became final when an IJ affirmed his negative credible fear finding over six months ago, on September 29, 2025." Dkt. 1 at 19. His detention therefore exceeds the "presumptively reasonable period" of six months. *Zadvydas*, 533 U.S. at 701.

Petitioner provides "good reason to believe that there is no significant

likelihood of removal in the reasonably foreseeable future." *Id*. There is no current system for removing Afghan nationals back to Afghanistan, given that the United States does not recognize the Taliban government. Dkt. 1 at 7-9. Since Petitioner's detention, the Government has not taken any concrete steps to secure travel documents to effectuate Mr. Jalili's removal to a third country, much less identify a country to which he can be lawfully removed or that would accept him.

The burden therefore shifts to Respondents to "rebut" Petitioner's showing. *Zadvydas*, 533 U.S. at 701. However, Respondents do not present any argument in opposition to Petitioner's factual or legal contentions. Dkt. 7. Accordingly, the Court concludes that Respondents fail to rebut Petitioner's showing and concludes that there is no significant likelihood of removal in the reasonably foreseeable future. It follows that Section 1231(a) does not authorize Petitioner's detention and Petitioner's ongoing confinement is unlawful.

### III.   CONCLUSION

For the foregoing reasons, IT IS ORDERED that: (1) Judgment be entered granting the Petition; (2) a writ of habeas corpus be issued requiring Petitioner's immediate release, subject to reasonable conditions of supervision, and preventing his re-detention unless Respondents comply with the revocation procedures set forth in 8 C.F.R. § 241.13(i); and (3) Respondents shall file a status report within seven days confirming their compliance with the Court's order.

Dated: April 16, 2026

_____
HON. MICHAEL B. KAUFMAN
UNITED STATES MAGISTRATE JUDGE

7